[Cite as *State v. Thomas*, 2014-Ohio-2166.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DOMINQUE L. THOMAS

    Appellant

C.A. No.    27090

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 13 05 1373

DECISION AND JOURNAL ENTRY

Dated: May 21, 2014

---

WHITMORE, Judge.

**{¶1}** Appellant, Dominique Thomas, appeals from a judgment of the Summit County Court of Common Pleas. We affirm.

I

**{¶2}** Sherri Brown lived by herself in an apartment on Tallmadge Avenue. Thomas, her on-again-off-again boyfriend of three years, would often spend the night. In early May 2013, Brown and Thomas had an argument and "broke up." Despite being separated at the time, Brown called Thomas on May 13th and was angry at him when he did not come over to her apartment. Thomas did, however, arrive the following morning. When Brown let him inside, Thomas discovered that his cousin, Gavin Turneur, had spent the night at Brown's. Brown testified that, in an effort to aggravate Thomas, she began telling him that she had slept with Turneur. Turneur was also taunting Thomas, and the two men began to wrestle. Brown

intervened and starting hitting Turneur to get him off of Thomas. Turneur then became upset and left.

{¶3} Brown stayed in the apartment with Thomas for a few minutes after Turneur left. She left the apartment angry because Thomas refused to give her money for beer. Brown then walked to her mother's apartment, which is about five minutes away. Thomas, upset that she was sleeping with various members of his family, followed Brown. While they were walking to her mothers', Turneur reappeared, riding a bicycle, and continued to taunt Thomas.

{¶4} Brown's mother, Christie, was in her front yard when she saw Brown and Thomas approaching. Christie said Thomas accused Brown of "going through his family." Thomas left when Christie called the police. Officer Russell Bassett responded to the call and spoke with Brown. He then took Brown back to her apartment to see if Thomas was still there. When Officer Bassett knocked on the door, he noticed a fire burning inside. He then called the fire department and forced his way into the apartment to search for anyone that may have been inside. The fire department arrived shortly thereafter and determined that the source of the fire was a pillow on top of a lit stove.

{¶5} After a jury trial, Thomas was convicted of arson, in violation of R.C. 2909.03(A)(1), a felony of the fourth degree.[1] Thomas now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

---

[1] Thomas was also convicted of intimidation of a crime victim or witness, in violation of R.C. 2921.04(B), a felony of the third degree. However, Thomas does not challenge this conviction on appeal.

THE CONVICTION OF THE APPELLANT FOR THE CHARGE OF ARSON IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.

**{¶6}** In his first assignment of error, Thomas argues that his arson conviction is against the manifest weight of the evidence. Specifically, Thomas argues that (1) he did not have time to return to the apartment to start the fire, and (2) the weight of the evidence implicates Turneur as the arsonist.

**{¶7}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

**{¶8}** R.C. 2909.03(A)(1) provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]ause, or create a substantial risk of, physical harm to any property of another without the other person's consent[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably

be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶9} Brown's mother, Christie, testified that she was in her front yard with her dog when she saw Brown approaching and Thomas following. According to Christie, Brown appeared "very red, flustered, [and] very stressed." Christie said that she noticed a knife tucked in Thomas' sleeve and he was accusing Brown of sleeping with various members of his family. When Christie called the police, Thomas left. Neither Brown nor Christie saw where Thomas went.

{¶10} Officer Russell Bassett was dispatched to Christie's apartment at 8:57 a.m. or 8:58 a.m. Officer Bassett testified that it probably took him five or six minutes to arrive and that he did not know his exact arrival time. Once he arrived, Officer Bassett spoke with Brown. Officer Bassett testified that Brown told him that Thomas had run her out of her apartment with a knife. He described Brown as "very excited," "very upset, and very loud." According to Officer Bassett, he requested additional officers meet him at Brown's apartment to see if Thomas was still there.

{¶11} Upon arriving at Brown's apartment, Officer Bassett knocked on the front door and noticed a fire burning inside. Officer Bassett testified that he placed a call to the fire department and forced his way through the front door to make sure nobody was inside. Lieutenant Matthew Moyers of the Akron Fire Department testified that his crew was dispatched to Brown's apartment at 9:13 a.m. and arrived on scene at 9:16 a.m. The fire department quickly identified the source of the fire as a pillow on top of the stove. According to Lieutenant Moyers, the fire had not been burning long because it had not yet spread to the surrounding cabinets or ceiling. Fire Investigator Ellis Polk testified that he concluded the fire was intentionally set

because a pillow was placed on a lit stove and there was no evidence that it was a cooking accident.

{¶12} Thomas first argues that he did not have enough time to return to Brown's apartment to start the fire. We disagree. The undisputed facts are: (1) the police were dispatched to Christie's apartment at 8:57 a.m. or 8:58 a.m., (2) the fire department was called at 9:13 a.m., and (3) it is a five minute walk from Christie's apartment to Brown's apartment.

{¶13} Christie and Brown both testified that Thomas left Christie's apartment when the police were called. Therefore, assuming that Thomas was walking and not running, he could have been back to Brown's apartment at 9:02 a.m. or 9:03 a.m. Officer Bassett testified that he arrived at Brown's apartment, knocked on the door, and noticed the fire inside. He then called the fire department. Even assuming three minutes had lapsed from the time Officer Bassett arrived at Brown's apartment until he called the fire department, this left Thomas with at least seven minutes to enter the apartment, turn on the stove, place a pillow on the burner, and flee. Thomas' argument that the timing of the events weighs heavily against his conviction for arson is without merit.

{¶14} Thomas further argues that the manifest weight of the evidence implicates Turneur as the arsonist. Specifically, Thomas argues that "Turneur had the knowledge, motive, and opportunity to start the fire."

{¶15} Brown testified that Thomas had previously threatened to burn her house down by putting a pillow on her stove. At trial, Brown maintained that nobody saw Thomas start the fire and it could have been Turneur. According to Brown, Turneur also threatened to burn her house down and was aware of Thomas' threat to use the pillow. Further, Brown explained, Turneur was angry at her because she was hitting him to get him off of Thomas when the two men were

wrestling. Brown testified that she did not want to get Thomas into any trouble. Brown said that she still loved Thomas and wanted to "get back together with him."

{¶16} While the fire department was extinguishing the fire, Turneur appeared and approached one of the police officers that had blocked the street to Brown's apartment. Officer Bassett spoke with Turneur and took his statement. There is no testimony about the substance of that statement. A subpoena was issued for Turneur to appear at trial. Officer William Bosak testified that he gave the subpoena to Turneur's grandmother. Turneur, however, did not appear. Neither party requested a continuance.

{¶17} Officer Bassett testified that when Brown learned that her apartment was on fire she became even more emotional. According to Officer Bassett, Brown told him that Thomas had previously threatened to burn her house down by placing a pillow on the stove. There is no testimony that Brown informed Officer Bassett that Turneur could have been the person that started the fire. Officer Bassett testified that he took Brown to the police station where she "filled out a statement." At that time, Brown also "signed a complaint against [Thomas] for aggravated menacing and arson."

{¶18} The credibility of Brown's testimony at trial is at issue. At trial, Brown stated that Turneur knew about Thomas' threat to burn her apartment down by placing a pillow on top of her stove and that Turneur had also threatened to burn her apartment down. Brown also testified that she did not want to get Thomas into any trouble, still loved him, and wanted to reestablish their romantic relationship. There is no testimony that prior to the trial, Brown ever told the police that Turneur could possibly be responsible for the fire. Brown provided an oral statement to Officer Bassett at the scene, a written statement at the police station, and signed a complaint against Thomas for arson.

**{¶19}** The jury heard Brown's testimony at trial regarding Turneur's knowledge, motive, and opportunity to start the fire. Being able to observe Brown's "demeanor, gestures and voice inflictions," the jury was in the best position to assess her credibility. *See State v. Hunter*, 9th Dist. Summit No. 26610, 2014-Ohio-910, ¶ 28. Further, the jury was aware that Turneur failed to appear after a subpoena was served on his grandmother. In reviewing the evidence in the record, we cannot conclude that this is the exceptional case in which the jury lost its way and created a manifest miscarriage of justice by convicting Thomas of arson. *See Otten*, 33 Ohio App.3d at 340. Therefore, Thomas' first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

> THERE WAS INSUFFICIENT EVIDENCE TO PROVE THE OFFENSE OF ARSON BEYOND A REASONABLE DOUBT, AND THUS, THE TRIAL COURT INCORRECTLY DENIED APPELLANT'S MOTION FOR ACQUITTAL IN VIOLATION OF CRIMINAL RULE 29.

**{¶20}** In his second assignment of error, Thomas argues that the court erred in denying his Crim.R. 29 motion because the State failed to produce sufficient evidence to sustain his arson conviction. We disagree.

**{¶21}** "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 23, quoting *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Thompkins*, 78 Ohio St.3d at 386, quoting *Black's* 1433. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

**{¶22}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

**{¶23}** Thomas argues that the State did not present sufficient evidence to sustain his conviction of arson because "there was no physical evidence linking [him] to the [a]rson." "However, '[o]f necessity, proof of arson must often rely heavily on circumstantial evidence because of the nature of the crime. But, as in all crimes, circumstantial evidence may establish any given element of the offense. Motive and opportunity are facts which can weigh heavily in establishing arson.'" *State v. Bates*, 9th Dist. Medina No. 12CA0046-M, 2013-Ohio-3565, ¶ 27, quoting *State v. Hoak*, 9th Dist. Lorain No. 94CA005917, 1995 WL 471383, *4 (Aug. 9, 1995). *Accord Jenks*, 61 Ohio St.3d at 272 ("Circumstantial evidence and direct evidence inherently possess the same probative value.").

**{¶24}** As discussed above, Thomas had previously threatened to burn Brown's apartment down by placing a pillow on the stove. Brown and Christie testified that Thomas was upset because he believed Brown was sleeping with his cousin and various other members of his family. Thomas left Christie's apartment when the police were called and had enough time to return to Brown's apartment, start the fire, and flee before Officer Bassett arrived.

**{¶25}** Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support Thomas' conviction of arson. Thomas' second assignment of error is overruled.

III

**{¶26}** Thomas' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.