[Cite as *State v. Roper*, 2014-Ohio-4786.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 27025 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT D. ROPER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 09 2618 |

DECISION AND JOURNAL ENTRY

Dated: October 29, 2014

HENSAL, Presiding Judge.

{¶1} Appellant, Robert D. Roper, appeals his conviction in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} Mr. Roper lived with his girlfriend, Doris Smith, her six-year-old daughter, M.S., and her twin two-year-old sons. In September of 2011, M.S. disclosed to her mother that Mr. Roper forced her to perform fellatio on him. M.S. was interviewed by a social worker from the CARE (Children at Risk Evaluation) team at Akron Children's Hospital and medically evaluated. M.S. told the interviewer that Mr. Roper "tortur[ed]" her by making her perform fellatio on him four times over four sequential days when she was five years old and in kindergarten.

{¶3} On September 12, 2012, the Grand Jury indicted Mr. Roper on one count of rape in violation of Revised Code Section 2907.02(A)(1)(b). A jury convicted him, and he was

sentenced to life in prison without the possibility of parole. Mr. Roper has appealed raising five assignments of error for this Court's review.

## II.

### ASSIGNMENT OF ERROR I

APPELLANT INCURRED PLAIN ERROR BY THE DENIAL OF DUE PROCESS AND THE RIGHT TO CONFRONTATION UNDER THE U.S. CONSTITUTION AND OHIO CONSTITUTION BECAUSE THE ONLY FACT WITNESS AGAINST HIM WAS INCOMPETENT TO TESTIFY ABOUT EVENTS FROM THREE YEARS OR MORE FROM THE DATE OF THE TRIAL.

{¶4} In his first assignment of error, Mr. Roper argues that this Court should "set a new standard" for the competency determination of a child-witness by requiring the trial court to find not only that the witness is competent to testify at the time of trial but also that the witness was competent at the time the offense occurred. He maintains that M.S. was incompetent to testify to the circumstances of the abuse because, while she was eight years old at the time of trial, she was only five years old at the time of the incidents. Mr. Roper contends that his constitutional rights of due process and confrontation of witnesses were violated because "it is virtually impossible to cross-examine an eight year old about what may or may not have occurred when they were five years of age." We disagree.

{¶5} Mr. Roper concedes that the trial court appropriately determined M.S.'s competency pursuant to Evidence Rule 601 and the standard set forth in *State v. Frazier*, 61 Ohio St.3d 247 (1991), syllabus. Further, because he failed to object to the trial court's determination of M.S.'s competency, he acknowledges that this Court should review his assignment under the plain error standard of review. *See State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, ¶ 24.

{¶6} Criminal Rule 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

> To correct a plain error, all of the following elements must apply: "First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights[ ]' [to the extent that it] * * * affected the outcome of the trial."

*State v. Bennett*, 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 64, quoting *State v. Hardges*, 9th Dist. Summit No. 24175, 2008-Ohio-5567, ¶ 9.

{¶7} As Mr. Roper concedes that the trial court followed the applicable legal rules, this Court concludes that it was not plain error for the trial court to find that M.S. was competent to testify at trial to the incidents that occurred approximately three years earlier. Without citing to any case law in support of his position, Mr. Roper asks this Court to rewrite Evidence Rule 601(A) and expand the test set forth in *Frazier*. Rule 601(A) provides that children less than ten years old are incompetent to testify if they "appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." In *Frazier*, the Ohio Supreme Court detailed five considerations a trial court must review in order to determine whether a child under ten is competent to testify. *Frazier*, 61 Ohio St.3d 247 at the syllabus.

{¶8} Further, in the case of *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, this Court determined under a similar fact pattern that the trial court did not err in finding that the victim, who was eight years old at the time of trial, was competent to testify to incidents

that occurred starting when she was five years old when it considered all of the factors in *Frazier*. *Id*. at ¶ 13. Accordingly, we overrule his first assignment of error.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY DENYING THE CRIMINAL RULE 29 MOTION FOR INSUFFICIENT EVIDENCE.

{¶9} Mr. Roper argues in his second assignment of error that the trial court erred in overruling his motion for acquittal under Criminal Rule 29 because both M.S. and her mother, Ms. Smith, were not credible witnesses. This Court disagrees.

{¶10} Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Archer*, 9th Dist. Summit No. 26848, 2014-Ohio-1207, ¶ 10, quoting *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. Whether a conviction is supported by sufficient evidence is a question of law that we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In order to determine whether there was sufficient evidence to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶11} Mr. Roper was charged with rape under Revised Code Section 2907.02(A)(1)(b). This section provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age,

whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). "Sexual conduct" includes fellatio. R.C. 2907.01(A).

{¶12} M.S. testified that she was five years old and in kindergarten when Mr. Roper "put his private in [her] mouth." This happened once per day for more than one day according to M.S. All the incidents occurred in Mr. Roper's bedroom, with the exception of one incident that occurred in Ms. Smith's bedroom, while her mother was at work. M.S. reported that, during each occurrence, he locked the bedroom door.

{¶13} Mr. Roper maintains that M.S. was not credible due to the passage of time between her disclosure in 2011 and his trial in 2013 in addition to the influence Ms. Smith had over her daughter. He further challenges Ms. Smith's veracity given the parties' tumultuous relationship and the fact that she practiced the "black arts" as a form of prayer. Mr. Roper's arguments, however, question the witnesses' credibility and the weight of the evidence rather than its sufficiency. *See Archer*, 2014-Ohio-1207, at ¶ 10. Upon review of the record, this Court concludes that there was sufficient evidence to support his rape conviction. Mr. Roper's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF [THE] EVIDENCE BECAUSE THE DEFENDANT'S WITNESS DEMONSTRATED THAT THE ALLEGATIONS AGAINST HIM WERE NOT PROVEN BEYOND A REASONABLE DOUBT.

{¶14} In his third assignment of error, Mr. Roper argues that his conviction is against the manifest weight of the evidence. This Court does not agree.

{¶15} To determine whether Mr. Roper's conviction is against the manifest weight of the evidence, this Court

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶16} Mr. Roper argues that the jury lost its way in convicting him of rape as: (1) Ms. Smith exhibited erratic behavior and a hatred of Mr. Roper that led her to influence M.S. to falsely accuse him of rape; (2) M.S. disclosed previous physical abuse allegedly committed by Mr. Roper that was unsupported by any visible marks; and (3) the children's services social worker, who interviewed M.S. in regard to the physical abuse allegation, testified that M.S. denied that anyone had touched her inappropriately.

{¶17} Ms. Smith admitted that, in 1998, she was charged with embezzlement which was later amended to 16 counts of forgery. She testified that she met Mr. Roper in 2007 and that they began a romantic relationship one year later. He moved into the home she shared with her three children when M.S. was five years old. While Ms. Smith and Mr. Roper initially shared a bedroom, he moved into a separate downstairs bedroom after he began relationships with other women. According to Ms. Smith, Mr. Roper babysat the children while she attended school and worked. Ms. Smith testified that she and Roper "fussed all the time." M.S. also testified that her mother did not like Mr. Roper. She stated that her mother and Mr. Roper frequently argued and fought when he lived with them.

{¶18} A children's services social worker, Annette Luccarelli, testified that, during her interview with Ms. Smith on the day that M.S. disclosed the abuse, Ms. Smith was "very, very upset," "emotional," and made threats that she would kill Mr. Roper. Ms. Smith went to the Portage Path Emergency Evaluation Center because, according to her, she was "pretty upset" and in a "homicidal state." She reported that, while she was there, she was hooked up to a machine that "looked at the cortex of her head and said it was bright orange, which said [she] had homicidal tendencies." Ms. Smith testified that she was discharged the same day with the medication Haldol. At the time of trial, she was still taking Haldol and receiving medical treatment for "[m]anic [d]epress[ion], homicidal [and] suicidal." Ms. Smith admitted that she "[s]ometimes" has problems with her memory where she may remember incidents but not specific dates. She described practicing the "black arts" by erecting an altar in her home, using "protection oil" and chanting "spells" to obtain favors and guard against harm.

{¶19} The substance of Mr. Roper's argument is that Ms. Smith's mental condition and behavior indicates that she is unreliable and had a vendetta against him for terminating the relationship. As a result, Mr. Roper maintains, she influenced her daughter to falsely accuse him of rape. Ms. Smith denied "taint[ing] or counsel[ing]" M.S. to make the accusations against Mr. Roper as retribution for the termination of the relationship. M.S. testified that she talks to her mother about what happened. While she spoke with her mother about testifying at trial, they did not talk about it "a lot."

{¶20} Cathy Laube, the social worker who interviewed M.S. at Akron Children's Hospital, testified that M.S. reported details of the abuse that a typical child of that age would not know. One of M.S.'s counselors, Dr. Cynthia Keck-McNulty, testified that a child who is coached on what to disclose lacks the ability to provide minute details about the abuse. Dr.

Keck-McNulty testified that, in her opinion, M.S. did not appear to be coached on what to say because she relayed such smaller details about the abuse.

{¶21} Donna Abbott, an Akron Children's Hospital nurse practitioner who the trial court declared an expert in the evaluation and treatment of child abuse, testified that she diagnosed M.S. as sexually abused. She formed her diagnosis after medically examining M.S. and reviewing the results of Ms. Laube's evaluation. While she did not observe any physical indications of abuse during the examination, Ms. Abbott testified that she based her diagnosis on statements M.S. made to Ms. Laube that she vomited because Mr. Roper's penis was too far down her throat and that he told her to take her teeth off his penis. According to Ms. Abbott, despite the fact that the medical exam failed to reveal any physical indications, she is able to make the diagnosis of sexual abuse based on the specific history of the child. Ms. Abbott opined that, in M.S.'s case, her history included reported details that would only be known to her if she actually experienced such abuse. We note that, on appeal, Mr. Roper does not challenge M.S.'s diagnosis or the admission of the testimony of Ms. Laube, Dr. Keck-McNulty, or Ms. Abbott.

{¶22} Regarding Mr. Roper's argument that M.S. and Ms. Smith made prior unsubstantiated allegations of physical abuse against him, Ms. Smith testified that she contacted children's services in May of 2011 when she observed bruising on M.S.'s forehead. When she confronted Mr. Roper about the bruises, according to Ms. Smith, he stated that M.S. ran into a door.

{¶23} M.S. also testified about this incident. According to M.S., Mr. Roper asked her multiplication questions that she could not answer. Every time she answered incorrectly, he hit her in the head with a Tonka truck. M.S. testified that Mr. Roper told her to tell her mother that

she received the marks when she ran into the walls. She reported that, the next day, he "popped" her in the back of the head and asked her why she told her mother the truth about the marks.

{¶24} Sarah Riffle, who was an intake social worker for children's services and who testified on behalf of the defense, stated that she interviewed M.S. about the physical abuse allegations on May 2, 2011. According to Ms. Riffle, M.S. reported that Mr. Roper hit her on her buttocks and legs with his hands and a belt in addition to leaving bumps on her head after hitting her with a truck. Ms. Riffle, however, did not see any marks on M.S. After the investigation, children's services determined that physical abuse was "indicated" rather than "substantiated" or "unsubstantiated" because Mr. Roper's methods of discipline were designed to "instill fear" rather than to serve as an appropriate punishment. Ms. Riffle's report also indicated, however, that M.S. had a "noticeable shift in her demeanor" when she talked about Mr. Roper. Specifically, Ms. Riffle noticed that M.S.'s "head went down, she became quiet, and she stopped smiling." M.S. told Ms. Riffle that he told her to lie and that he would beat her if she told the truth.

{¶25} Ms. Smith testified that children's services told her Mr. Roper could not live at the home any longer as a result of this allegation. She acknowledged that, because she did not have a babysitter, she let him move back in two weeks after the investigation concluded.

{¶26} Finally, Mr. Roper notes that, when asked by Ms. Riffle at the May 2, 2011, interview whether anyone touched in her in a sexual manner, she replied in the negative. When M.S. did disclose the abuse, she reported that it occurred when she was five years old and in kindergarten. M.S. turned six years old 12 days after the interview. If M.S. is accurate about the timing of the abuse, it very likely had already occurred before the interview with Ms. Riffle. Mr.

Roper questions why M.S. would fail to disclose the sexual abuse to Ms. Riffle when directly asked when she so freely disclosed the alleged physical abuse.

{¶27} Ms. Laube, however, testified that a child-victim may delay disclosure of abuse, especially if she was threatened. M.S. initially indicated to Ms. Laube that Mr. Roper threatened to "whoop [her] butt" if she told anyone about the abuse. At trial, however, M.S. denied that he told her not to tell her mother about the abuse although she testified that she believed he would beat her if she did tell. Both Ms. Laube and Dr. Keck-McNulty also testified that child-victims tend to disclose additional details over time rather than all at once. Accordingly, both Ms. Laube's and Dr. Keck-McNulty's testimony reveals that M.S.'s failure to disclose the abuse to Ms. Riffle is consistent with the typical behavior of young victims.

{¶28} The crux of Mr. Roper's arguments challenges the believability of both Ms. Smith's and M.S.'s testimony. We note that whether the jury believed Ms. Smith and M.S. is an issue of their credibility. The jury was in the best position to observe their demeanor and ascertain their credibility. *State v. Thomas*, 9th Dist. Summit No. 27090, 2014-Ohio-2166, ¶ 19, quoting *State v. Hunter*, 9th Dist. Summit No. 26610, 2014-Ohio-910, ¶ 28. The weight to be given their testimony and their credibility is primarily an issue for the jury. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "This Court will not overturn the [jury]'s verdict on a manifest weight of the evidence challenge only because [it] chose to believe certain witnesses' testimony over the testimony of others." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. After a careful review of the record, this Court does not find that this is the "exceptional case" wherein the jury lost its way resulting in a conviction that was against the manifest weight of the evidence. *Otten*, 33 Ohio App.3d at 340. Mr. Roper's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE.

{¶29} Mr. Roper argues in his fourth assignment of error that the trial court abused its discretion in sentencing him to life in prison without the possibility of parole. He maintains that the court's reason for imposing the maximum sentence is "tautological" because all rape victims will have to live with the abuse for the remainder of their lives. Mr. Roper further argues that the sentence was unwarranted because he had no prior sexual offenses and was a "relatively young man." We disagree.

{¶30} This Court utilizes the test set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912 when reviewing criminal sentences:

> First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id*. at ¶ 26. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶31} Mr. Roper does not argue that his sentence was contrary to law. Instead, he confines his argument to the second prong of the *Kalish* test concerning whether the court abused its discretion. We, therefore, limit our review accordingly.

{¶32} According to the testimony at trial, M.S. was five years old and in kindergarten at the time of the abuse. She stated that she had "bad dreams" about Mr. Roper and described one occasion where she dreamt he was a "predator[ ]" from a video game who came to her daycare center. Ms. Smith testified that M.S. discontinued counseling after three months because talking

about the abuse triggered an inability to sleep and to have nightmares when she did fall asleep. Ms. Smith reported that M.S. would not go downstairs where Mr. Roper's former bedroom was until she repainted the room. Even after redecorating, M.S. refused to be alone downstairs unless her mother was present. According to Ms. Smith, she stopped working for a while to spend time with M.S. Her grades dropped from A's and B's to D's and F's because she could not concentrate. Ms. Smith further testified that M.S. switched schools because she used to have to walk in an area of the neighborhood where Mr. Roper's family lived. Dr. Keck-McNulty diagnosed M.S. with adjustment disorder with anxiety.

{¶33} At sentencing, the court stated that, "[a]s I look over the facts and circumstances in this case, in this Court's opinion, this five year old will have to live with what you did to her for the rest of her life * * *." The court further stated that it sentenced Mr. Roper to life in prison without the possibility of parole "based upon the facts and circumstances here, consideration of the relevant sentencing factors, applying the minimum sanction that the Court has determined will protect the public and punish you without imposing an unnecessary burden on state or local resources, [and] considering the seriousness and the recidivism factors * * *." The sentencing entry indicates that the trial court considered the principles and purposes of sentencing under Revised Code Section 2929.11 and the felony sentencing factors under Section 2929.12. This Court cannot say that, under these circumstances, the trial court abused its discretion when it imposed Mr. Roper's sentence. *Kalish*, 2008-Ohio-4912, at ¶ 26. His fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

IT WAS PLAIN ERROR FOR THE TRIAL COURT TO IMPOSE A NO CONTACT ORDER DUE TO THE DEFENDANT ALREADY INCURRING A PRISON SENTENCE ON THE CASE.

**{¶34}** In his fifth assignment of error, Mr. Roper argues that the trial court erred by ordering him to have no contact with the victim and her family as part of his sentence. We disagree.

**{¶35}** Mr. Roper argues that, based on the holdings of other appellate districts, the court erred in imposing a no contact order. This Court, however, recently concluded that a trial court may impose a no contact order as part of its sentence. *State v. Anderson*, 9th Dist. Summit No. 26640, 2014-Ohio-1206, ¶ 39.

**{¶36}** Based on his narrow argument and the precedent in this district set forth in *Anderson*, this Court concludes that the trial court did not commit plain error in ordering that Mr. Roper have no contact with the victim and her family. His fifth assignment of error is overruled.

### III.

**{¶37}** Mr. Roper's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CONCURS.

MOORE, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶38} As to the first four assignments of error, I concur in the majority's opinion. As to the fifth assignment of error, I respectfully dissent for the reasons articulated by J. Belfance in her dissent in *State v. Anderson*, as referenced above.

APPEARANCES:

DONALD GALLICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.