[Cite as *State v. Yuncker*, 2015-Ohio-3933.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0068-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LEONARD S. YUNCKER | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 14-CR-0084 |

DECISION AND JOURNAL ENTRY

Dated: September 28, 2015

CARR, Judge.

{¶1} Appellant, Leonard Yuncker, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} On February 23, 2014, the Medina County Grand Jury indicted Yuncker on one count of complicity to commit felonious assault in violation of R.C. 2923.03(A)(2) and R.C. 2903.11(A)(2). The charge stemmed from a shooting at a house party hosted by Yuncker several weeks earlier. Yuncker pleaded not guilty to the charge at arraignment. The matter proceeded to a jury trial and Yuncker was found guilty. The trial court ordered a presentence investigation report. Subsequently, Yuncker appeared with counsel for sentencing and the trial court imposed a two-year term of incarceration.

{¶3} On appeal, Yuncker raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED [] WHEN IT ENTERED A JUDGMENT OF CONVICTION WHEN THE EVIDENCE FAILED TO ESTABLISH THAT THE APPELLANT COMMITTED ANY ACT THAT AIDED AND ABETTED THE COMMISSION OF THE OFFENSE OF FELONIOUS ASSAULT AND THEREFORE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} In his first assignment of error, Yuncker contends that his conviction for complicity to commit felonious assault was against the manifest weight of the evidence. This Court disagrees.

{¶5} When a criminal defendant asserts that his conviction is against the manifest weight of the evidence:

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶6} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In making this determination, this Court is mindful that '[e]valuating the evidence and assessing credibility are primarily for the trier of fact.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 11, quoting *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994).

{¶7} Yuncker was convicted of complicity to commit felonious assault in violation of R.C. 2923.03(A)(2) and R.C. 2903.11(A)(2). R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or

abet another in committing the offense[.]" R.C. 2903.11(A)(2) states "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2901.22(B) states, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶8} With respect to the requirements for a conviction for complicity by aiding and abetting, the Supreme Court of Ohio has stated, "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240 (2001), at syllabus. We further note that "[c]ircumstantial evidence possesses the same evidentiary force as direct evidence." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 26.

{¶9} In support of his manifest weight challenge, Yuncker relies on *State v. Cummings*, 10th Dist. Franklin No. 90AP-1144, 1992 WL 82783, (Apr. 21, 1992), as well as numerous additional cases, in support of the proposition that suspicious behavior and being present at the scene of a crime does not equate to aiding and abetting in the commission of the offense. Yuncker maintains that the weight of the evidence in this case supports the conclusion that he was merely present at the scene of the shooting and that he did not commit any act that was tantamount to aiding and abetting in the commission of the felonious assault. Yuncker also

asserts that the discrepancies in the witnesses' testimony, coupled with the use of drugs and alcohol by the individuals involved, renders their testimony unreliable.

{¶10} The State presented testimony at trial outlining the following sequence of events. When Yuncker's father went out of town during the winter of 2014, Yuncker invited several friends over to his father's house in Medina. Two of his friends, Matt Morton and Casey Dimitrov, stayed with Yuncker for several days. The three men smoked marijuana and drank alcohol during that time. In addition to drinking and smoking marijuana, Yuncker was taking Percocet, and Dimitrov used Heroin. Dimitrov testified that Yuncker and Morton were "messing around with guns" and Yuncker "was saying that [Morton] was his bodyguard the whole time." Dimitrov further testified that Yuncker and Morton were "hinting" toward shooting him and that they were "going against [him]."

{¶11} In the early morning hours of February 2, 2014, the three men got into a heated argument when Yuncker and Morton accused Dimitrov of stealing several guns from the bedroom where Dimitrov and his girlfriend had been sleeping. Dimitrov was familiar with the guns because Yuncker and Morton were "showing them off" a few days earlier. Yuncker went into his bedroom and got a .22 rifle to threaten Dimitrov. Morton explained that Yuncker hoped to use the rifle "to scare [Dimitrov], to get him to leave. * * * It's a gun. It will scare anybody." When Dimitrov eventually walked downstairs to exit through the garage, Yuncker followed him with the rifle. After Dimitrov walked outside, Yuncker gave the gun to Morton. At the request of Morton, Yuncker went upstairs to look for Dimitrov out the front window while Morton peered out from a man door in the garage. Soon thereafter Dimitrov returned to the house due to the frigid temperatures and the fact that his cellphone needed to be charged. Morton attempted to scare Dimitrov away by firing a warning shot into the ground. Morton then reloaded the rifle

with an open box of bullets sitting in the back of the garage. Dimitrov took exception to the warning shot and reentered the garage where he found Yuncker and Morton. Morton pointed the rifle at Dimitrov's head. Dimitrov continued to walk toward Morton. When Dimitrov tried to swing the gun away of his face, Morton pulled the trigger and shot Dimitrov in the kneecap. After the shooting, Morton and Yuncker told Dimitrov it was his fault that he got shot. Fearing that police would be coming, Morton and Yuncker discussed what to do with the rifle. Morton handed the rifle to Yuncker and he went up the stairs to hide the weapon in the house.

{¶12} Yuncker correctly points out on appeal that there was contradictory testimony offered at trial. The testimony of Dimitrov and Morton sharply diverged on a number of key points regarding Yuncker's involvement. The most notable discrepancies involved whether Yuncker actually handed the gun to Morton before the shooting, whether Dimitrov willingly left the property before returning to the garage, as well as who was responsible for escalating the situation. Officer Nathan Simpson of the Medina Police testified that Yuncker himself offered two separate versions of the story during an interview on the night of the incident. In the first version, Yuncker and Dimitrov got into an argument about Yuncker's girlfriend and Yuncker retrieved the rifle, but he then set the weapon aside before Morton grabbed the gun on his own volition during the argument with Dimitrov. In the second version, the men got into an argument regarding missing guns before Yuncker went to his room to get the rifle and then attempted to use the gun to get Dimitrov to leave the house. At the end of their conversation, when Officer Simpson asked Yuncker if Morton intentionally shot Dimitrov, Yuncker responded in the affirmative and stated he "knew something was going to happen, because when [Morton] says he's going to do something, he does it."

**{¶13}** After a careful review of the record, we cannot say that this is the exceptional case in which the evidence weighs heavily against conviction. The weight of the evidence does not support Yuncker's position that he was merely present at the scene of the incident. "The criminal intent of the aider and abettor 'can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed.'" *State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 7, quoting *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohip-3056, ¶ 13. There was testimony at trial that after Yuncker accused Dimitrov of stealing the guns, Yuncker provided Morton with the rifle, assisted Morton in acting as a lookout, and was responsible for hiding the weapon after Morton shot Dimitrov. While Yuncker emphasizes that there were discrepancies in the testimony at trial, it is well settled that "[t]his Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe the testimony of a particular witness." *State v. Eutin*, 9th Dist. Wayne No. 14AP0021, 2015-Ohio-924, ¶ 15, citing *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Moreover, "[a]lthough there were discrepancies in the testimony of the witnesses 'the jury is free to believe all, part, or none of the testimony of each witness.'" *Clark*, 2015-Ohio-2978, at ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. In light of the testimony demonstrating that Yuncker supported and cooperated with Morton in the commission of the felonious assault, we cannot say that Yuncker's complicity conviction was a manifest miscarriage of justice.

**{¶14}** The first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN SENTENCING APPELLANT TO A TWO YEAR PRISON TERM WHICH IS DISPROPORTIONATE TO THE CONVICTED OFFENSE.

**{¶15}** In his second assignment of error, Yuncker argues that the trial court erred in imposing a two-year prison sentence. This Court disagrees.

**{¶16}** This Court utilizes the test set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, when reviewing criminal sentences. *See State v. Roper*, 9th Dist. Summit No. 27025, 2014-Ohio-4786, ¶ 30.

> First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Kalish* at ¶ 26. The Supreme Court of Ohio has held that "[t]rial courts have full discretion to impose a prison sentence within the [applicable] statutory range[.]" *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. In exercising that discretion, "'[a] court must carefully consider the statutes that apply to every felony case[,] * * * includ[ing] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.'" *State v. Davison*, 9th Dist. Lorain No. 10CA009803, 2011-Ohio-1528, ¶ 12, quoting *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

**{¶17}** Yuncker does not contend that his two-year prison sentence was outside the applicable statutory range. Instead, he contends that the trial court did not analyze the felony sentencing factors prior to imposing sentence. A review of the record shows that the trial court specifically stated in its sentencing entry that it considered the principles and purposes of sentencing pursuant R.C. 2929.11. With respect to R.C. 2929.12, the trial court stated at the sentencing hearing that a two-year prison sentence was appropriate "[a]fter reviewing the seriousness and recidivism factors." As the trial court stated that it considered the appropriate

sentencing factors in R.C. 2929.11 and 2929.12 and fashioned a sentence within the permissible range, we cannot say that the sentence is clearly and convincingly contrary to law. *Kalish* at ¶ 18. To the extent Yuncker argues that the trial court otherwise abused its discretion in imposing sentence, we note that the trial court ordered a presentence investigation report ("PSI") prior to sentencing, and the trial court referred to its consideration of the PSI in its sentence entry. "When a presentence investigation report is ordered, '[w]e presume that the court utilized the information in the report when issuing its sentence." *State v. Pope*, 9th Dist. Medina No. 13CA0031-M, 2014-Ohio-2864, ¶ 14, quoting *State v. Coryell*, 9th Dist. Summit No. 24338, 2009-Ohio-1984, at ¶ 19. The PSI has not been included in the appellate record. It is the appellant's responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal. *See* App.R. 9. This Court has consistently held that, where the appellant has failed to provide a complete record to facilitate appellate review, this Court is compelled to presume regularity in the proceedings below and affirm the trial court's judgment. *State v. Daniel*, 9th Dist. Summit No. 27390, 2014-Ohio-5112, ¶ 5, citing *State v. McGowan*, 9th Dist. Summit No. 27092, 2014-Ohio-2630, ¶ 6. In cases such as this where the PSI is necessary to enable an appropriate review of the propriety of the sentence, Yuncker's failure to ensure that the record includes the PSI requires a presumption of regularity in the sentencing proceedings. *Daniel* ¶ 6, citing *McGowan* at ¶ 7.

{¶18} The second assignment of error is overruled.

III.

{¶19} Yuncker's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

CONRAD G. OLSON, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.