[Cite as *State v. Archer*, 2014-Ohio-1207.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26848 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DENNIS ARCHER | | BARBERTON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. 11 CRB 00900 |

DECISION AND JOURNAL ENTRY

Dated: March 26, 2014

BELFANCE, Judge.

{¶1}    Appellant, Dennis Archer, appeals from his conviction in the Barberton Municipal Court of one count of aggravated menacing. For the reasons that follow, this Court affirms.

I.

{¶2}    The crime at issue in this case arose from a dispute between neighbors. Mr. Archer, who had been residing on Clayton Drive in Coventry Township for approximately three years, had a hostile relationship with many of his neighbors, including Susan Yeatts. According to Ms. Yeatts' son Joseph Yeatts, Mr. Archer was a "bully" who often tried to intimidate his mother and other people in the neighborhood.

{¶3}    On April 15, 2011, Ms. Yeatts was walking her dog near her home when she stopped to talk to another neighbor, Kelly Keffer, who had stopped her vehicle at her mailbox to get her mail. A rental moving truck was also parked in the street because Joseph was in the process of moving back to his parents' home after serving in the military. While Ms. Yeatts and

Ms. Keffer were stopped in the street, Mr. Archer backed his vehicle out of his nearby driveway and headed down the street toward them. As he approached, he laid on his horn, even though Ms. Yeatts believed there was room for Mr. Archer's vehicle to pass. Nonetheless, she stepped aside and moved behind Ms. Keffer's vehicle, but Mr. Archer continued to blast his horn as he drove past.

{¶4} Ms. Yeatts was so upset by Mr. Archer's behavior that she was crying when she returned to her home. She immediately told her son Joseph about what had happened, stating that she could not stand Mr. Archer's behavior any longer. Joseph went outside to confront Mr. Archer about upsetting his mother. Although the two would later dispute what transpired between them, they each admitted that they exchanged some unfriendly words. Ultimately, Mr. Archer denied that he threatened Joseph or his mother, while several witnesses corroborated Joseph's statements that Mr. Archer made threats towards the Yeattses.

{¶5} According to Joseph, during their exchange of words, Mr. Archer gestured toward his car and threatened to get a gun and shoot Joseph and his "bitch, whore mother." Joseph did not know whether Mr. Archer had a gun in his vehicle, but he feared for the safety of himself and his mother.

{¶6} Consequently, Joseph told his mother, who was standing near the front door of their home and had also heard Mr. Archer's threats, to go call the sheriff's office. While Ms. Yeatts went inside to call the sheriff's office, Joseph went to the rental truck to retrieve a pistol that he had brought back from his military service in Iraq. Although the gun was not loaded, he hoped that Mr. Archer would be scared off if he thought that Joseph was able to defend himself. When Mr. Archer saw Joseph's weapon, he walked toward his vehicle. Although Joseph feared that he might be going to retrieve a gun, Mr. Archer got into his vehicle and drove away.

**{¶7}** Mr. Archer drove to the sheriff's office to file a complaint against Joseph, although the details of his complaint are unclear from the record. Because the sheriff's department had just received a conflicting telephone report about the incident from Ms. Yeatts and had already dispatched a sheriff's deputy, a sergeant at the office followed Mr. Archer back to the neighborhood to assist in the investigation.

**{¶8}** Because portions of the incident were recorded by one of the four video surveillance cameras that Mr. Archer had mounted outside his home, that video was reviewed during the investigation. In addition to Joseph and Ms. Yeatts, the sheriff's department took statements from Ms. Keffer and another neighbor who had witnessed the altercation. The investigation ultimately resulted in no charges against Joseph. Mr. Archer was charged with one count of aggravated menacing.

**{¶9}** The case proceeded to a jury trial, at which the State presented six witnesses to support its case against Mr. Archer: Joseph and Ms. Yeatts, Ms. Keffer and the other neighbor who had witnessed the incident, and the two investigating witnesses from the sheriff's department.[1] Mr. Archer testified on his own behalf. The jury ultimately found Mr. Archer guilty of aggravated menacing, and he was convicted and sentenced accordingly. Mr. Archer appeals and raises three assignments of error.

II.

ASSIGNMENT OF ERROR I

THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR AGGRAVATED MENACING AND THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENSE A RULE 29 MOTION, OR DIRECTING A VERDICT FOR THE DEFENSE.

---

[1] Although the surveillance video was also played for the jury, it was not admitted as an exhibit or otherwise made part of the trial court record. Consequently, although Mr. Archer refers to the video in his appellate brief, it is not before this Court on appeal.

{¶10} Mr. Archer's first assignment of error is that the trial court erred in failing to grant his motion for acquittal under Crim.R. 29. "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. Whether a conviction is based on sufficient evidence is a question of law that this Court reviews de novo. *State v. Williams,* 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the State has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J. concurring). When a defendant challenges sufficiency of the evidence, we do not evaluate credibility, rather, the Court must:

> examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶11} Mr. Archer was convicted of aggravated menacing under R.C. 2903.21(A). Specifically, the complaint alleged that Mr. Archer knowingly caused Ms. Yeatts to believe that he would cause serious physical harm to her or a member of her immediate family. Mr. Archer argues that the State failed to prove that he "knowingly" caused Ms. Yeatts believe that he would cause serious physical harm to her or a member of her family because the State's evidence was that he directed his threats to Joseph, not Ms. Yeatts. Mr. Archer's primary contention is that, because he directed his threats to Joseph alone, there was insufficient evidence to find that he knowingly caused Ms. Yeatts to believe that he would cause serious physical harm to her or a member of her immediate family. In particular, he maintains that the State presented "absolutely

no evidence" that Mr. Archer knew Ms. Yeatts was present at the time or that Joseph would convey the threats to her.

{¶12} The element of knowledge is defined in R.C. 2901.22(B):

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶13} The State presented considerable evidence about the circumstances surrounding Mr. Archer's threats that would have made him aware that his threats would either be overheard by Ms. Yeatts or conveyed to her by Joseph. To begin with, although Mr. Archer argues that the State failed to prove that he knew Ms. Yeatts was present at the time he made his threats, both Joseph and Ms. Yeatts testified that she was outside on the porch or in the doorway when Mr. Archer yelled his threats at Joseph and that she heard him at that time, which caused her to become extremely fearful and upset. Although the State did not offer direct evidence that Mr. Archer actually saw Ms. Yeatts standing there, there was circumstantial evidence from which the jury could reasonably infer that he could see her; Mr. Archer was yelling threats directly at Joseph, who was standing near the front door of the Yeatts house, while Ms. Yeatts was present on the porch or at the doorway.

{¶14} There was also evidence that Mr. Archer screamed his threats at Joseph and that his loud threats could be heard by neighbors who were not on the Yeattses' property. Ms. Keffer and another neighbor testified that Mr. Archer yelled so loudly that they could hear him from a few houses away and were able to discern that he threatened to shoot and kill Joseph and/or his mother. Given the high volume of Mr. Archer's voice, a jury could reasonably conclude that Mr. Archer knew that Ms. Yeatts would also have been able to hear his threats from the porch or doorway of her home.

{¶15} Finally, even if Mr. Archer did not know that Ms. Yeatts overheard his threats while he was yelling at Joseph, he would have been aware that Joseph would convey them to her, given the serious nature of the threats and the fact that Joseph's reason for speaking to Mr. Archer was his concern for his mother. Mr. Archer referred to Joseph's mother as a "bitch, whore" and threatened to get a gun and shoot her. Joseph was so concerned about the safety of himself and his mother that he got a gun to scare Mr. Archer away. *See State v. Knoble,* 9th Dist. Lorain No. 08CA009359, 2008-Ohio-5004, ¶ 13 (concluding that there is no requirement in R.C. 2903.21 "that the threat of harm [] be uttered directly to the intended victim[]"); *id.* at ¶ 24-26 (concluding the evidence supported the conclusion that defendant was aware that, given the nature of his threats, the individuals who heard the threats would likely relay them to the defendant's intended target).

{¶16} Given all of the circumstances surrounding Mr. Archer's threats and construing this evidence in favor of the State, a rational juror could have been convinced beyond a reasonable doubt that Mr. Archer knowingly caused Ms. Yeatts to believe that he would cause serious physical harm to her or her son Joseph. Consequently, the trial court did not err in overruling Mr. Archer's Crim.R. 29 motion for acquittal. The first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIIN ERROR IN NOT INSTRUCTING THE JURY ON (A) SELF-DEFENSE AND (B) THE LESSER-INCLUDED OFFENSE OF DISORDERLY CONDUCT.

{¶17} Mr. Archer asserts in his second assignment of error that the trial court committed plain error in failing to instruct the jury on self-defense and on the lesser-included offense of disorderly conduct. He asserts that even though the errors were not challenged through timely

objections, the trial court should have, nonetheless, sua sponte addressed the issues. We do not agree.

**{¶18}** Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To establish plain error,

> "[f]irst, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights * * * ' [to the extent that it] * * * affected the outcome of the trial."

*State v. Hardges*, 9th Dist. Summit No. 24175, 2008-Ohio-5567, ¶ 9, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

### Self Defense

**{¶19}** First, Mr. Archer argues that the trial court committed plain error by failing to instruct the jury on the affirmative defense of self-defense. A criminal defendant has the burden of proving the affirmative defense of self-defense by a preponderance of the evidence. *State v. Martin*, 21 Ohio St.3d 91 (1986), syllabus; R.C. 2901.05(A). In addition to the specific requirements for establishing the defense of self-defense, it is fundamental that, as an affirmative defense, Mr. Archer was required to establish that he had a "justification for admitted conduct." (Internal quotations and citations omitted.) *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). If his defense was merely a "denial or contradiction" of the State's evidence against him, no instruction on the affirmative defense of self-defense was warranted. *Id.*

{¶20} Although Mr. Archer suggests on appeal that his threats to get a gun were justified because Joseph pulled a gun on him first, there was no such evidence presented at trial. He never admitted that he threatened Joseph or Ms. Yeatts, either before or after Joseph got the gun. Mr. Archer testified that, unprompted by any threats from him, Joseph told him to leave the area because he was not safe there and then went to the rental truck and retrieved his gun. When Joseph brandished the gun, Mr. Archer immediately got into his vehicle and drove away. Mr. Archer's testimony at trial was that all of the State's witnesses were lying and that he had done nothing except flee from Joseph after he brandished a gun. Consequently, there were no facts before the jury to warrant an instruction on self-defense. Therefore, the trial court did not err in failing to give a self-defense instruction. Accordingly, Mr. Archer has not demonstrated plain error.

### Disorderly Conduct

{¶21} Next, Mr. Archer argues that the trial court should have given a jury instruction on the lesser-included offense of disorderly conduct under R.C. 2917.11(A)(1). The trial court is required to instruct the jury on a lesser-included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *State v. Carter*, 89 Ohio St.3d 593, 600 (2000). The offense of disorderly conduct under R.C. 2917.11(A)(1) required proof that Mr. Archer "recklessly" caused "inconvenience, annoyance, or alarm to another" by threatening harm to them. He argues that "the jury could have reasonably concluded that [he] acted recklessly rather than knowingly."

{¶22} Mr. Archer again focuses this argument on evidence that was not before the trial court, as he argues that "[t]here was clear evidence" that he acted in response to threats from Joseph. In evaluating the record in this case, however, there was no such evidence presented by

any of the witnesses at trial. The jury had the choice of believing two distinct versions of the events. Mr. Archer either threatened to get a gun and shoot the Yeattses, unprompted by any threats from Joseph, or he committed no crime at all, as he denied doing anything wrong. Because there was no evidence to support a conviction on the lesser-included offense of disorderly conduct, no jury instruction on that offense was warranted. The trial court did not err in failing to give the instruction, and, thus, Mr. Archer has not demonstrated plain error.

{¶23} In light of the foregoing, we overrule Mr. Archer's second assignment of error.

## ASSIGNMENT OF ERROR III

TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO: (A) REQUEST A SEPARATION OF WITNESSES, (B) REQUEST AN INSTRUCTION ON SELF-DEFENSE[,] (C) REQUEST AN INSTRUCTION ON ANY LESSER[-]INCLUDED OFFENSES[,] AND (D) FAILED TO MAKE ADEQUATE OBJECTIONS AND HAVE APPROPRIATE EVIDENCE ADMITTED IN THE TRIAL.

{¶24} Mr. Archer asserts in his third assignment of error that his counsel was ineffective for failing to raise various issues below. We do not agree.

{¶25} To establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694.

### Self Defense and Disorderly Conduct Instructions

{¶26} Mr. Archer argues that his counsel was ineffective for failing to request jury instructions on self-defense and the lesser-included offense of disorderly conduct. As discussed above, the evidence adduced at trial did not warrant either instruction. Accordingly, it cannot be

said that trial counsel's conduct was deficient or that Mr. Archer was prejudiced by that conduct. Thus, we overrule these arguments.

## Separation of Witnesses

{¶27} Mr. Archer also argues that his trial counsel was ineffective for failing to request a separation of witnesses. Without supporting legal authority, his brief argument is simply that "prejudice should be presumed" from counsel's failure to request a separation of the State's witnesses because each of his neighbors gave "virtually identical testimony" about the threats he made against Joseph and Ms. Yeatts. Mr. Archer's limited argument appears to be premised upon the suggestion that all of these witnesses were actually in the courtroom during the trial or somehow speaking to each other during the course of the trial. However, Mr. Archer has not pointed to any portion of the proceedings to support the notion that the witnesses were all present or were speaking to each other during the proceedings. Again, Mr. Archer has failed to demonstrate prejudice. Consequently, Mr. Archer has failed to demonstrate that the outcome of the trial would have been different if counsel had requested a separation of witnesses.

## Voice Identification

{¶28} Finally, Mr. Archer argues that trial counsel's performance was deficient because he failed to object to the testimony of the two neighbors who testified about hearing Mr. Archer yelling threats to get a gun and shoot Joseph and/or his mother. Specifically, he asserts that the State failed to lay a proper foundation for the ability of either neighbor to identify his voice.

{¶29} To begin with, although Ms. Keffer testified about hearing Mr. Archer threaten to kill Joseph's mother, she clearly testified that, after she heard screaming, she looked and saw Mr. Archer as he threatened Joseph. She testified that she could not hear Joseph but that she could hear Mr. Archer because his yelling was "barbarically loud." From Mr. Archer's physical

appearance, she concluded that he was extremely "mad" because she saw "his body was shaking." She further recalled that she was then talking to another neighbor, who was also concerned about the yelling so they both went over to investigate.

{¶30} Although the other neighbor testified that he had identified Mr. Archer by the sound of his voice because his view of the scene was blocked by a car, he later explained that he recognized Mr. Archer's voice because there had been repeated altercations with him in the neighborhood. Moreover, even if trial counsel had successfully challenged his ability to recognize Mr. Archer's voice, his voice-identification testimony only corroborated the testimony of three other witnesses. Mr. Archer has failed to demonstrate that the outcome of his trial would have been different if trial counsel had objected to the voice-identification testimony. Because the record does not support Mr. Archer's claim of ineffective assistance of trial counsel, his third assignment of error is overruled.

## III.

{¶31} Mr. Archer's assignments of error are overruled. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

CEDRIC B. COLVIN, Attorney at Law, for Appellant.

MICHELLE BANBURRY, Attorney at Law, for Appellee.