[Cite as *State v. Saunders*, 2016-Ohio-5284.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     14CA0125-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID SAUNDERS | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.     13-CR-0734 |

DECISION AND JOURNAL ENTRY

Dated: August 8, 2016

---

MOORE, Presiding Judge.

{¶1}    Defendant-Appellant David Saunders appeals from the judgment of the Medina County Court of Common Pleas.  We affirm.

I.

{¶2}    Lauren Hatch and Mr. Saunders had been family friends since childhood.  Around 2006, the two began a five or six year, on again, off again relationship.  After the relationship ended, the two would still talk and see each other.  Additionally, Mr. Saunders indicated he did some work around Ms. Hatch's house and claimed to have a key to her house.  Mr. Saunders stated that he would stop by the house and check on Ms. Hatch on a fairly regular basis.  Ms. Hatch denied that Mr. Saunders had a key.

{¶3}    At the time of the incident at issue in this case, November 24, 2013, both Mr. Saunders and Ms. Hatch were dating other people.  Nonetheless, Mr. Saunders continued to call Ms. Hatch and leave her voicemails expressing his affection for her and desire to get back

together. Ms. Hatch blocked Mr. Saunders' calls, but nonetheless continued to see and converse with Mr. Saunders on occasion. She acknowledged that she told Mr. Saunders she would see him on November 24, 2013, but testified that she did not intend to actually go. Ms. Hatch testified that the two did not set a time to meet and that she only agreed to go because she feared he would become violent if she did not. Ms. Hatch testified that Mr. Saunders had hit, kicked, and pushed her in the past.

{¶4} Around midnight on November 24, 2013, Mr. Saunders left Ms. Hatch another voicemail. In that voicemail, Mr. Saunders sounded frustrated and angry, stating that he was not going to call or text Ms. Hatch again because that's what she wanted. He also indicated that he should have known better, that he had been pushed enough, and that he could not do it anymore. He additionally informed Ms. Hatch that he was going to block her and not accept her calls.

{¶5} That evening, Ms. Hatch's children were staying with her sister and Ms. Hatch invited her boyfriend, Adam Barnett, over to her house on Huntington Street in Medina, and he stayed the night. According to Ms. Hatch and Mr. Barnett, the windows and doors were closed and locked at the time they went to bed. Around 5:40 a.m., Ms. Hatch was awakened by someone shaking her. When the person turned on the light, she realized it was Mr. Saunders. Mr. Saunders looked at Mr. Barnett and told Mr. Barnett that he was going "kick [his] a**." He then pulled out a knife and threatened to kill Ms. Hatch. Mr. Barnett reached for his clothes and Mr. Saunders ripped them out of his hands. Ms. Hatch was getting up and Mr. Saunders grabbed her arms and the two ended up in her son's bedroom. Mr. Saunders was holding the knife and Ms. Hatch used her hands and arms to block her face. Then Mr. Barnett came in the bedroom and he and Mr. Saunders began fighting. Ultimately, Mr. Saunders fled from the residence. After Ms. Hatch went downstairs and called the police, she and Mr. Barnett noticed that the

window in the living room was open and the screen was knocked out of it. Additionally, the front door was unlocked. Police found the screen outside on the ground near the window.

{¶6} Ms. Hatch sustained cuts to her left hand, left elbow, and right ring finger. Mr. Barnett received lacerations to one of his fingers, face, and back. They both required stitches to treat some of their wounds. Based upon her investigation, Detective Mary Gross concluded that the injuries were defensive wounds. Mr. Saunders had a cut on his forehead, which he initially told police he received while performing a car repair. At trial he claimed to have gotten the laceration during the altercation.

{¶7} When police initially arrested Mr. Saunders, he denied any involvement in the assaults; however, he did admit to drinking a lot the night before. He claimed to have been at home the whole night and stated that he never left his house. Police nonetheless searched his home and located clothing and shoes with blood stains. The blood stains contained DNA that was consistent with Mr. Barnett's and Ms. Hatch's DNA. Inside Mr. Saunders' bedroom, police located a box for a knife, but the knife was not recovered. Additionally, surveillance video placed a car that Mr. Saunders had access to in the area of Ms. Hatch's house near the time of the assaults. Only several months after the assaults did Mr. Saunders change his version of events and admit to being at Ms. Hatch's house during the relevant timeframe. However, Mr. Saunders' version of events was drastically different than Mr. Barnett's and Ms. Hatch's; he believed that Mr. Barnett was at fault and that he should have been charged.

{¶8} Mr. Saunders was indicted on three counts of aggravated burglary and two counts of felonious assault. Ultimately, the matter proceeded to a jury trial. During the trial, the trial court declined to allow defense counsel to cross-examine Mr. Barnett about the status of a prior conviction. Additionally, the trial court refused to instruct the jury on self-defense. The jury

found Mr. Saunders guilty of all the charges and Mr. Saunders was sentenced to an aggregate term of 9 years in prison.

{¶9} Mr. Saunders has appealed, raising two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY ON SELF[-]DEFENSE.

{¶10} Mr. Saunders argues in his first assignment of error that the trial court erred in failing to instruct the jury on self-defense for the felonious assault charges.

{¶11} "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." (Citations omitted.) *State v. Rafferty,* 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 91. Self-defense is an affirmative defense. *See State v. Rust,* 9th Dist. Summit No. 23165, 2007-Ohio-50, ¶ 10. "In order for the defendant to successfully raise an affirmative defense, evidence of a nature and quality sufficient to raise the issue must be introduced." (Citations omitted.) *Rafferty* at ¶ 91. "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of the defense. * * * [H]owever, * * * [i]f the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." (Internal quotations and citation omitted.) *State v. Fulmer,* 117 Ohio St.3d 319, 2008-Ohio-936, ¶ 72.

{¶12} The State maintained that Mr. Saunders committed felonious assault by knowingly causing or attempting to cause physical harm to Mr. Barnett and Ms. Hatch with a deadly weapon, i.e. a knife. Thus, Mr. Saunders was charged with using deadly force.

To establish self-defense in circumstances involving the application of deadly force, a defendant must prove that he: (1) * * * was not at fault in creating the situation giving rise to the affray; (2) * * * ha[d] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) * * * [did] not [ ] violate[ ] any duty to retreat or avoid the danger.

(Internal quotations and citations omitted.) *State v. D'Agostino,* 9th Dist. Lorain No. 12CA010304, 2014-Ohio-551, ¶ 23.

{¶13} "In addition to the specific requirements for establishing the defense of self-defense, it is fundamental that, as an affirmative defense, [the defendant] was required to establish that he had a justification for admitted conduct. * * * If his defense was merely a denial or contradiction of the State's evidence against him, no instruction on the affirmative defense of self-defense was warranted." (Internal quotations and citations omitted.) *State v. Archer,* 9th Dist. Summit No. 26848, 2014-Ohio-1207, ¶ 19.

{¶14} Mr. Saunders testified to the following version of events. A few days prior to November 24, 2013, Mr. Saunders asked Ms. Hatch if she would go to the cemetery with him on November 22 because it was the one-year anniversary of his father's death. Ms. Hatch said that she was busy that day but could go November 24. Mr. Saunders believed that, although they had not agreed on a specific time, they were going to the cemetery in the morning of November 24 and that he would go over to her house and they would go together.

{¶15} That evening Mr. Saunders had difficulty sleeping and decided to head over to Ms. Hatch's house as he needed to talk to someone. He parked across the street from the house in a parking lot, despite there being ample room in her driveway. He arrived around 5:30 a.m.

{¶16} According to Mr. Saunders, he walked to the house and went to the front door first. The screen door was locked (and was unable to be opened with a key) and so Mr. Saunders knocked but there was no answer. Mr. Saunders walked to the back of the house and noticed the

screen to one of the windows on the grass. He assumed the cat had knocked it out. He proceeded to the back door and knocked again. Mr. Saunders tried the back door, found it unlocked, and entered the residence. He called out to Ms. Hatch but there was no answer. Mr. Saunders went upstairs and encountered Ms. Hatch right outside her bedroom. According to Mr. Saunders, she stated, "Oh, I'm sorry. I'm sorry, Dave. Now's not a good time. * * * It's not a good time. Just go. I'll call you in a little bit." Instead of leaving, Mr. Saunders began asking Ms. Hatch questions about whether she was alright. As he was doing so, Mr. Barnett came out from behind Ms. Hatch, grabbed Mr. Saunders and pushed him up against a dresser, and began yelling at Mr. Saunders to leave. Mr. Saunders noticed that Mr. Barnett had a knife. Mr. Saunders pushed Mr. Barnett, and Mr. Barnett stumbled back and fell against another wall. The next thing Mr. Saunders knew, Mr. Barnett was on top of him holding a knife on Mr. Saunders' forehead. Mr. Barnett kept asking if Mr. Saunders was going to leave. At the same time, Ms. Hatch was trying to break up the altercation and also kept telling Mr. Saunders to leave. Mr. Barnett then let Mr. Saunders up and he proceeded out the front door and jogged back to his car.

{¶17} Mr. Saunders asserted he was shocked by what happened because he and Ms. Hatch had plans that day. While he was troubled by the events, he decided not to call the police to report the incident because he did not want to get Ms. Hatch in trouble. He also testified that he was unaware that either Mr. Barnett or Ms. Hatch had been cut. While Mr. Saunders averred that he had blood all over him, he thought it was his own blood, as he received a cut to his forehead. Mr. Saunders denied bringing a knife to the house and denied attacking anyone.

{¶18} Even if we were to accept Mr. Saunders' testimony as true, we could not conclude the trial court abused its discretion in failing to give a self-defense instruction. Mr. Saunders never admitted to having or using the knife, nor did he acknowledge that he attempted to, or

actually did, cause physical harm to Mr. Barnett and Ms. Hatch. In fact, Mr. Saunders seemed to have no idea that Mr. Barnett and Ms. Hatch were even injured or have any knowledge of how they were injured. Instead, it appears that Mr. Saunders was asserting that, if he injured the victims, he did not act with the necessary mens rea, not that he knowingly caused physical harm to the victims with a knife and was justified in doing so. *See Archer,* 2014-Ohio-1207, at ¶ 19.

{¶19} However, even if we were to assume that Mr. Saunders' testimony presented evidence of a justification, we could not conclude that he presented sufficient evidence of the other elements necessary to warrant a self-defense instruction. Even viewing the testimony in a light most favorable to Mr. Saunders, there is little to support the conclusion that he had permission to be in the house at that particular time. Even if Mr. Saunders had keys and had plans to see Ms. Hatch at some point in the morning, nothing suggests that Mr. Saunders had permission to be in the house in the pre-dawn hours of the morning. Mr. Saunders first knocked on the doors, suggesting that he was seeking permission to enter. Further, any notion that Mr. Saunders had permission to be in the residence was dispelled when Ms. Hatch told him to leave. Thus, the trial court could have concluded that Mr. Saunders failed to present sufficient evidence that he was not at fault in creating the situation that gave rise to the affray. *See State v. Cobb,* 153 Ohio App.3d 541, 2003-Ohio-3821, ¶ 11 (1st Dist.) (concluding that self-defense was not established when the evidence demonstrated that the defendant pushed his way into the victim's apartment because the defendant was at fault in creating the situation that gave rise to the affray); *see also State v. Depew,* 4th Dist. No. 00CA2562, 2002-Ohio-6158, ¶ 35 ("By entering his neighbor's yard, even at the victim's urging to do so, and choosing to confront the victim, appellant voluntarily entered into the encounter with the victim, who he knew to be a person prone to violence, especially when drinking, as is apparently the case here. Accordingly,

appellant was precluded from asserting the affirmative defense of self-defense because he has not put forth evidence that he did not create the situation that gave rise to the affray."); *State v. McAllister,* 1st Dist. Clermont Nos. 858, 859, 1980 WL 353200, *2 (Feb. 13, 1980) ("Appellant, in entering the White home to burglarize it, created the situation which gave rise to the affray. Moreover, there is no evidence that he attempt[ed] to retreat to avoid the danger when George White entered the room. The trial court therefore correctly refused to instruct the jury on the affirmative defense of self-defense.").

**{¶20}** Additionally, the trial court could have reasonably concluded that Mr. Saunders' testimony failed to present sufficient evidence that he had "a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force[.]" *See D'Agostino*, 2014-Ohio-551, at ¶ 23. Mr. Saunders did not testify that he had no means of escape other than using force. And while he did testify that, at one point, he was pinned against a dresser, he also testified that, after that, he pushed Mr. Barnett away and Mr. Barnett stumbled back against a wall. There was no testimony that that event did not provide Mr. Saunders with an opportunity to extricate himself from the situation. Further, there was no evidence that Mr. Saunders could not have avoided the situation all together by leaving when Ms. Hatch first asked him to go. *See McAllister* at *2.

**{¶21}** Given all of the foregoing, we determine the trial court did not abuse its discretion in failing to give a self-defense instruction. Mr. Saunders' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY NOT ALLOWING MR. SAUNDERS' COUNSEL TO CROSS EXAMINE THE ALLEGED VICTIM ON HIS PROBATION, SPECIFICALLY BOTH FOR HIS CHARACTER FOR TRUTHFULNESS AND AS A POSSIBLE MOTIVE TO LIE TO POLICE AS TO WHO WAS THE AGGRESSOR ON THE NIGHT IN QUESTION.

{¶22} Mr. Saunders asserts in his second assignment of error that the trial court erred in failing to allow him to cross-examine Mr. Barnett about the status of his conviction, as such provided evidence of his character for truthfulness or untruthfulness and of a possible motive to lie. While Mr. Saunders additionally asserts in the argument portion of his brief that the trial court's ruling also violated his right to confront witnesses, such an argument is outside the scope of his stated assignment of error, *see State v. Bennett,* 9th Dist. Lorain No. 14CA010579, 2015-Ohio-2887, ¶ 13, and is also undeveloped in his brief. *See* App.R. 16(A)(7).

{¶23} "The trial court possesses broad discretion in determining the admission of evidence." *State v. Gray,* 9th Dist. Summit No. 27365, 2015-Ohio-1248, ¶ 55. "Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." (Citation omitted.) *Id.* An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶24} During the State's direct examination of Mr. Barnett, Mr. Barnett testified that he had prior convictions for driving under the influence of alcohol and for improperly transporting a firearm. There was no testimony about whether Mr. Barnett was on probation for either offense. On cross-examination, defense counsel sought to ask Mr. Barnett what the status of the felony weapons charge was on November 24, 2013. The State objected and the following discussion took place:

> The Court: Please tell me what you're trying to show.
>
> [Defense Counsel]: I believe [Mr. Barnett] is going to testify that the case was pending at the time. He had just did a change of plea and was sentenced and he was on probation at the time, and I'm going to ask him about the fact that he was on probation at the time. I want to ask him about the fact while on probation, one of his requirements of probation was not to have any weapons and not to drink any alcohol and had a driver's license suspension.

The Court: Okay. The objection is sustained. The relevance is dubious and the probative value is substantially outweighed by the prejudicial effect, 403.

[Defense Counsel]: If I may make a record[], Your Honor?

* * *

[Defense Counsel]: I believe that in the direct testimony, there was discussion of why he was at the house. There was discussions of him being at the house. It is a core part of our case that the two victims have made up at least portions of this story and I believe that the motivation for saying that was to keep [Mr. Barnett] out of * * * trouble.

[The Court]: There is no evidence to that effect so far except your assertion, and I repeat that * * * the prejudicial effect of this evidence substantially outweighs the probative value.

[Defense Counsel]: Then, Your Honor, I would move at the conclusion of this testimony he not be released from his subpoena so that if my client testifies and puts this question to the record, that he then be allowed so I can call him again as my case in chief.

* * *

[The Court]: * * * If you wish, I can tell [Mr. Barnett] to remain available in case we need him further. I can do that.

{¶25} Thus, Mr. Saunders' counsel sought to admit evidence he believed would demonstrate not only Mr. Barnett's character for untruthfulness, but also that Mr. Barnett and Ms. Hatch had a motive to lie about who possessed the knife, as Mr. Barnett's possession of the knife possibly would have violated his probation, if he was on probation. The trial court did not conclude the testimony was inadmissible under either Evid.R. 608(B) (governing admission of specific instances of conduct probative of character for truthfulness/untruthfulness) or Evid.R. 404(B) (governing admissibility of other acts evidence to demonstrate, inter alia, motive). Instead, it found that the probative value of the potential testimony was substantially outweighed by the danger of prejudice. *See* Evid.R. 403(B). At the point in time that Mr. Barnett testified, there was no testimony that anyone other than Mr. Saunders possessed a weapon that night. In

fact, subsequent to the above exchange, Mr. Barnett denied possessing a weapon during the altercation. In addition, at this point in the trial, Mr. Saunders had already elicited testimony from Ms. Hatch that she did not know whether Mr. Barnett had a criminal record and that she would not have made up a story to keep Mr. Barnett from getting in trouble. Accordingly, at that time defense counsel's theory appeared to be based more on speculation than upon admitted evidence.

{¶26} Mr. Saunders, in his argument, largely focuses on the admissibility of the evidence under Evid.R. 608(B) and spends little time discussing why the trial court abused its discretion in finding that admission of the evidence would violate Evid.R. 403(B). While Mr. Saunders would later testify that Mr. Barnett was the one who possessed the knife, Mr. Saunders' counsel failed to recall Mr. Barnett to the stand or renew his request to have the testimony admitted after Mr. Saunders testified. Thus, it is difficult to conclude that Mr. Saunders preserved the argument he now makes.

{¶27} Nonetheless, even assuming the argument was preserved and that the trial court abused its discretion in failing to allow the testimony, we cannot say that reversible error occurred. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "Crim.R. 52(A) asks whether the rights affected are 'substantial' and, if so, whether a defendant has suffered any prejudice as a result." *State v. Harris,* 142 Ohio St.3d 211, 2015-Ohio-166, ¶ 36.

{¶28} The State presented overwhelming evidence of Mr. Saunders' guilt that included the testimony of both victims, DNA evidence, and the testimony of police officers. Further, Mr. Saunders's testimony was marred by credibility issues including the fact that Mr. Saunders denied any involvement in the altercation, or even being at the scene, for most of the police's

investigation.  We cannot say that allowing Mr. Saunders to attempt to procure the testimony that he sought to have admitted would have altered the outcome of the trial.  *See id.* at ¶ 36-37.  We note that Mr. Barnett denied having a weapon that night, while an empty knife box had been recovered from Mr. Saunders' apartment.  And as Mr. Saunders pointed out in his brief, "[t]here [wa]s no guarantee what [Mr. Barnett] would have stated if asked [about the status of his felony conviction]."   Given the entirety of the record, we conclude any error on the part of the trial court was harmless beyond a reasonable doubt.  *See id.*  Even if Mr. Barnett had testified that he was on probation at the time and that he was prohibited from having any weapons, we conclude that the State presented evidence establishing Mr. Saunders' guilt beyond a reasonable doubt.  *See id.*

{¶29}  Mr. Saunders' second assignment of error is overruled.

III.

{¶30}  Mr. Saunders' assignments of error are overruled.  The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

─────

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

SEAN BUCHANAN, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.