[Cite as *State v. Fraam*, 2017-Ohio-1088.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.  15CA010784 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LEWIS J. FRAAM | AVON LAKE MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.  TRD1500198 |

DECISION AND JOURNAL ENTRY

Dated: March 27, 2017

CANNON, Judge.

{¶1}  Defendant-Appellant Lewis Fraam appeals from the judgment of the Avon Lake Municipal Court.  This Court affirms.

I.

{¶2}  In January 2015, a complaint was filed in Avon Lake Municipal Court alleging that, on January 26, 2015, around 1:00 a.m., Mr. Fraam violated R.C. 4511.201, a third-degree misdemeanor as charged.  The matter proceeded to a trial, after which the trial court found Mr. Fraam guilty and sentenced him to a fine of $300.00, court costs, and a license suspension of six months.  Additionally, two points were assessed on Mr. Fraam's driving record.  Mr. Fraam moved to stay the execution of the sentence, but his motion was denied.

{¶3}  Mr. Fraam has timely appealed the trial court's judgment, raising a single assignment of error for our review.  The State has not filed an appellate brief in this matter.  *See* App.R. 18(C).

II.

## ASSIGNMENT OF ERROR

THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶4} In Mr. Fraam's stated assignment of error, he argues that the verdict is against the manifest weight of the evidence. Mr. Fraam appears to assert that his testimony was more credible than the officer's and that the weight of the evidence does not support that Mr. Fraam possessed the requisite mens rea. While he also argues in the text of his brief that the verdict is based upon insufficient evidence, his captioned assignment of error is directed only at the weight of the evidence. We will limit our analysis accordingly. *See State v. Saunders*, 9th Dist. Medina No. 14CA0125-M, 2016-Ohio-5284, ¶ 22.

{¶5} When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶6} Mr. Fraam was found guilty of violating R.C. 4511.201 due to his actions in a parking lot near Recreation Boulevard and the stadium. R.C. 4511.201(A) states that:

> No person shall operate a vehicle * * * on any public or private property other than streets or highways, in willful or wanton disregard of the safety of persons or property.

> This section does not apply to the competitive operation of vehicles on public or private property when the owner of such property knowingly permits such operation thereon.

{¶7} In the context of this statute, this Court has concluded that the term "willful" "implies an act done intentionally, designedly, knowingly, or purposely, without justifiable

excuse." *State v. Adams*, 9th Dist. Medina No. 03CA0098-M, 2004-Ohio-3253, ¶ 9, quoting *State v. Earlenbaugh*, 18 Ohio St.3d 19, 21 (1985). We have concluded that an act is "wanton" when it is done "in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, reputation, or property of others." *Adams* at ¶ 9, quoting *Earlenbaugh* at 21-22. Further, "when the operator of a vehicle, with full knowledge of the surrounding circumstances, recklessly and inexcusably disregards the rights of other motorists, his conduct may be characterized as wanton." *Adams* at ¶ 9, quoting *Earlenbaugh* at 22.

{¶8} Officer Larry Miller, a patrol officer with Avon Police Department, testified that, on January 26, 2015, he was traveling westbound on Chester Road in a marked police car. He averred that it "was snowing very badly that night." He observed a vehicle, which he later determined was being driven by Mr. Fraam, pull into the parking lot of the Great Escape. He could not see the vehicle, but he observed "the headlights come around in a rapid fashion in the snow." The vehicle exited the lot and continued westbound on Chester Road. Due to the treacherous conditions, Officer Miller had difficulty catching up to Mr. Fraam's vehicle. However, as he drove by the Great Escape parking lot, he noticed that the only vehicle tracks in the parking lot were those forming "a small doughnut[,]" which he defined as "a small circle."

{¶9} Officer Miller continued to try to catch up to Mr. Fraam's vehicle and followed it as it turned right onto 611 and then left onto Recreation Boulevard. Officer Miller observed Mr. Fraam's vehicle pull into a parking lot near the stadium. Officer Miller testified that the parking lot had at least two or three dozen light poles, although he acknowledged that there were no other cars or people in the parking lot. Officer Miller testified that the "vehicle went straight, did a doughnut, and was starting to come out" when Mr. Fraam's vehicle met Officer Miller's. He

clarified that Mr. Fraam "pulled in, [] gunned it, [and] the rear end of the vehicle swung all the way around, and [Mr. Fraam] came back out [of the parking lot]." Officer Miller estimated he was approximately 200 yards from the vehicle. Mr. Fraam's vehicle then passed Officer Miller's, and Officer Miller turned around and was finally able to initiate a traffic stop at the stop light.

{¶10} Officer Miller approached Mr. Fraam's vehicle and asked Mr. Fraam "what he was doing back there[.]" Mr. Fraam responded that "he was having fun on his way home." Officer Miller indicated that Mr. Fraam was cited for a third-degree misdemeanor due to his prior record. *See* R.C. 4511.201(B). Officer Miller testified that he believed Mr. Fraam's actions could have damaged his vehicle, the lights posts, or that he could have hurt himself. Officer Miller acknowledged that there were dash cam and body cam videos of events during the timeframe; however, due to the weather and the distance, Officer Miller testified that the doughnut was not visible on the video.

{¶11} Mr. Fraam testified that he reviewed the video and asserted that Officer Miller's testimony was inconsistent with the video. Mr. Fraam indicated that the video showed him pulling into the parking lot, turning around, and leaving and also showed that Officer Miller appeared to be much closer than 200 yards. Mr. Fraam maintained that the video did not show his rear wheels sliding out and asserted that, because his vehicle was a front wheel drive vehicle, his rear tires would not have spun around as Officer Miller had testified. Mr. Fraam agreed that his car could do a doughnut but believed that he would have had to "do it in reverse." While Mr. Fraam declined to answer several questions, he did admit to being in the parking lot near the stadium and telling Officer Miller that he was just having fun before he went home. Mr. Fraam clarified that he "sometimes take[s] advantage of empty parking lots when they are snow

covered" as he views them as "a great tool to learn how to regain control of your vehicle once it is in a point of no[] control." He further testified that such was his original intent in going in the parking lot near the stadium. However, when he saw Officer Miller behind him he was not "foolish enough to go ahead and [] break the law in * * * full view of the officer." At that point, Mr. Fraam turned around and exited the lot. Mr. Fraam claimed that when he told Officer Miller he was just having fun, that was in reference to the Great Escape parking lot, not the parking lot near the stadium, which was the source of the complaint against him. Thus, it appears that Mr. Fraam denied that he did a doughnut in the parking lot near the stadium. The trial court declined to view the videos and ultimately found Mr. Fraam guilty.

{¶12} After independently reviewing the record, we cannot say that the trial court lost its way and committed a manifest miscarriage of justice in finding Mr. Fraam guilty. While Mr. Fraam appears to assert that his testimony was more credible than Officer Miller's and that Officer Miller should not be believed because his testimony was not corroborated, we cannot say that the trial court's credibility determinations were unreasonable. Further, Mr. Fraam has not pointed to any case law that requires that the officer's testimony be corroborated under the circumstances before us. *See* App.R. 16(A)(7). "We remain mindful that '[t]he [trier of fact] was able to observe the witnesses' demeanor during [ ] testimony and use these observations to weigh the credibility and resolve the conflicts in the testimony.'" *State v. Gasser*, 9th Dist. Medina No. 15CA0046-M, 2016-Ohio-7538, ¶ 34, quoting *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28. "Moreover, as we have stated numerous times, the '[t]he trier of fact is free to believe all, part, or none of the testimony of each witness.'" *Gasser* at ¶ 34, quoting *State v. Parker*, 9th Dist. Lorain No. 15CA010750, 2016-Ohio-5663, ¶ 23. Further, we

disagree with Mr. Fraam's contention that the weight of the evidence did not support that he possessed the requisite mens rea.

{¶13} There was evidence presented from which the trier of fact could reasonably conclude that the conditions were treacherous on the night at issue, that Mr. Fraam did a doughnut in the parking lot of the Great Escape, that Mr. Fraam was not driving cautiously in light of Officer Miller's inability to keep up with Mr. Fraam's vehicle, and that Mr. Fraam did another doughnut in the parking lot near the stadium. There was also evidence that there were two to three dozen light posts in the parking lot near the stadium and that some of the posts were in the vicinity of Mr. Fraam's vehicle. Even Mr. Fraam acknowledged that, when he was asked by the officer what he was doing, he told the officer that "he was having fun[.]" While Mr. Fraam denied making a doughnut in the parking lot near the stadium, and asserted that his comment instead referred to his conduct in the Great Escape parking lot, the trial court was not required to believe his explanation. Given Officer Miller's testimony and Mr. Fraam's comment that "he was having fun[,]" there was evidence that Mr. Fraam intentionally made two doughnuts and thus his actions could be categorized as willful. *See Adams*, 2004-Ohio-3253, at ¶ 9, quoting *Earlenbaugh*, 18 Ohio St.3d at 21 (defining willful as "an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse"). Further, in light of the surrounding circumstances, which included the presence of two to three dozen light posts, the treacherous conditions, and the evidence that Mr. Fraam was seeking to learn how to gain control of his vehicle after intentionally losing control, and "hav[e] fun[,]" the trier of fact could also reasonably have concluded that his actions were in willful "disregard of the safety of persons or property." R.C. 4511.201(A); *see also Logan v. Adams*, 4th Dist. Hocking No. 431, 1986 WL 3400, *1-2 (Mar. 20, 1986) (affirming conviction and concluding there was ample evidence

where defendant twice did doughnuts on resident's snow-covered yard throwing snow and mud on his porch). We cannot conclude that Mr. Fraam's conviction is against the weight of the evidence. Therefore, we overrule Mr. Fraam's sole assignment of error.

III.

**{¶14}** Mr. Fraam's assignment of error is overruled. The judgment of the Avon Lake Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Avon Lake Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

TIMOTHY P. CANNON
FOR THE COURT

HENSAL, P.J.
CONCURS.

CARR, J.
DISSENTING.

{¶15} I respectfully dissent from the judgment of the majority, as I would conclude that the verdict is against the weight of the evidence. In light of the circumstances of this case, I cannot say that the weight of the evidence supports that Mr. Fraam operated his vehicle "in willful or wanton disregard of the safety of persons or property." R.C. 4511.201(A). Here, there was no testimony about how far apart the light posts were, how close Mr. Fraam got to the posts, or how fast he was going while doing the doughnut. Further, Mr. Fraam's charge was only based upon the events in the parking lot near the stadium. Accordingly, to the extent he may have been driving too fast on the road or may have engaged in other conduct in the Great Escape parking lot, such would not support that he violated R.C. 4511.201(A) while in the parking lot near the stadium. Therefore, because I would conclude the weight of the evidence does not support the verdict, I respectfully dissent.

(Cannon, J., of the Eleventh District Court of Appeals, sitting by assignment.)

APPEARANCES:

ROBERT CABRERA, Attorney at Law, for Appellant.

RICHARD KRAY, Prosecuting Attorney, for Appellee.